**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5097-18T3

IN THE MATTER OF
APPLICATION OF JOHN
LASKI FOR A PERMIT TO
PURCHASE A HANDGUN.

_____

Submitted September 16, 2020 – Decided September 22, 2020

Before Judges Ostrer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. 18-044.

Nicholas A. Moschella, Jr., attorney for appellant John Laski.

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent State of New Jersey (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In this handgun-permit appeal, the sole question is the location of the applicant's residence under the statute that empowers the chief of police "of the

municipality where the applicant resides" to issue the permit. N.J.S.A. 2C:58-3(d).

The applicant, John Laski, has owned a home in West Milford for over thirty years and has rented a month-to-month residence in Wayne for over four years. To reduce his commute and to avoid family strife, he spends most nights in Wayne.

But Laski still considers West Milford to be his permanent residence. Over the years, he has been an active volunteer in West Milford, but not in Wayne. He uses his West Milford address for voting and his driver's license. He visits his West Milford property most weekends, and he stores vehicles and other personal property there. Laski's wife and two adult sons still live there, although one son also spends time in Wayne. Laski intends to move back to the West Milford house when he retires.

When Laski applied for handgun permits, he applied to the West Milford police chief. But an administrative lieutenant of the West Milford Police Department denied the applications. According to the lieutenant, Laski's

applications falsely claimed that Laski resided in West Milford.[1] Laski appealed to the Law Division.

After hearing testimony from the lieutenant and Laski regarding the residence issue, the court decided that Laski did not intentionally falsify his application. Nonetheless, the court decided that Laski resides in Wayne for purposes of the handgun-permit statute. The court relied on the fact that Laski spends most nights in Wayne.

In so doing, the trial court applied the wrong standard. "[T]he Legislature intended the word 'resides' as used in the N.J.S.A. 2C:58-3d to be synonymous with the term 'domicile.'" In re Berkeley, 311 N.J. Super. 99, 102 (App. Div. 1998). Therefore, Laski's place of domicile, as distinct from where he sleeps most nights, determines where he may seek a handgun permit.

A person may have multiple residences but only one domicile. Mercadante v. Paterson, 111 N.J. Super. 35, 39 (Ch. Div. 1970), aff'd o.b., 58 N.J. 112 (1971). A person's domicile is usually that person's home. Restatement

---

[1] The lieutenant's letter does not state that he was acting on behalf of and communicating the decision of the chief of police. Laski did not question the lieutenant's authority, although the statute vests decision-making authority in the chief of police. N.J.S.A. 2C:58-3(d); see Weston v. State, 60 N.J. 36, 43 (1972) (noting chief's authority, while recognizing that other officers may assist in related investigation).

A-5097-18T3

(Second) of Conflict of Laws § 11 (Am. Law Inst. 1971). "Where there are multiple residences . . . domicile is that place which the subject regards as his true and permanent home." Citizens Bank & Tr. Co. v. Glaser, 70 N.J. 72, 81 (1976). However, a person's expressions of intention are not conclusive. See Restatement (Second) of Conflict of Laws § 20 cmt. b(2) (noting that a person's statements about how they view a dwelling "cannot be deemed conclusive . . . since they may have been made to attain some ulterior objective and may not represent his [or her] real state of mind"). Thus, a court must consider additional criteria.

In deciding if a dwelling is a person's "true and permanent home," a court should consider the following: "[i]ts physical characteristics; [t]he time [the applicant] spends therein; [t]he things he does therein; [t]he persons and things therein; [h]is mental attitude toward the place; [h]is intention when absent to return to the place; [and] [o]ther dwelling places of the person concerned, and similar factors concerning them." Restatement (Second) of Conflict of Laws § 12 cmt. c. See also Citizens Bank, 70 N.J. at 81 (stating that the Restatement's definition of "home" in section 12 is "authoritative"); Mercadante, 111 N.J. Super. at 39-40 (citing Restatement (First) of Conflict of Laws § 13 (Am. Law Inst. 1934)).

4

Simply counting the nights that an applicant spends in one place is insufficient to determine that applicant's domicile (or "reside[nce]," in the language of the handgun permit statute). For instance, a dwelling may be an applicant's home or domicile even if the applicant spends more time than not away from that dwelling. See Restatement (Second) of Conflict of Laws § 12 cmt. h, illus. 5 (describing a scenario in which a person's weekend- and vacation-residence can be that person's home even though the person, for business reasons, lives elsewhere). Nonetheless, "the fact that a person lives for a considerable time in a place tends to show that the place is his home." Restatement (Second) of Conflict of Laws § 12 cmt. e.

In Berkeley, we explained that for the purposes of the firearm statute, an applicant's contacts with the municipality must be "substantial," and they "require 'elements of permanency, continuity and kinship with the physical, cultural, social and political attributes' of a community." Berkeley, 311 N.J. Super. at 102 (quoting State v. Benny, 20 N.J. 238, 251 (1955)). Those elements are usually present in an applicant's domicile.

Equating "resides" with "domicile" invests decision-making authority in the police chief with the greatest ability to assess an applicant's fitness. "[A] gun permit applicant's contacts with a municipality undergirds the legislative

intent behind authorizing a municipal police chief to assess the applicant's fitness for possession of a gun." Ibid.

We held that, for purposes of N.J.S.A. 2C:58-3(d), the applicant in Berkeley did not "reside" in the New Jersey municipality where he owned a martial arts studio and slept when he worked late – twice a week at most. Id. at 102–03. The applicant's principal contacts were in New York City, where he voted, paid taxes, had a driver's license, and where he lived most of the time. Id. at 102. We held that the applicant was obliged to submit his application to the State Police, rather than to the local New Jersey chief of police. See id. at 101.

To determine whether Laski properly applied to the West Milford chief of police, the trial court must reconsider the evidence and decide whether Laski's domicile is, as he contends, in West Milford. The fact that Laski spends most of his time in Wayne is an important consideration, but it is not the only consideration in determining his domicile.

We vacate the trial court's order and remand for reconsideration in light of Berkeley and the law of domicile. We express no opinion on the dispositive question of Laski's domicile. We also leave it to the trial court to determine

whether, in light of our ruling, it would be appropriate to permit either the prosecutor or the applicant to present additional evidence.

Vacated and remanded for reconsideration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5097-18T3